The next case call for oral argument is in matter of the State of Slayden. Good morning. Good morning. I'm Mark Johnson. I'm here representing Sandy Phillips. Like Mr Slayden did a will that was admitted to probate the circuit court of Massachusetts County, Illinois. In that will, he nominated his two daughters, whom I represent, and the his second wife, the widow. We're here today because the trial judge denied the daughter's request for reimbursement of their attorney fees and their reasonable travel expenses. Now, the law is fairly well settled in Illinois on this point. Section 27-2 of the Probate Code, in the cases that have been decided in pursuit of that statute, make it clear that reasonable compensation is due an attorney that performs services that benefit the estate. Now, I don't want to repeat what's in the record and what's in the brief about the kinds of work that that I did on behalf of the estate, that the daughter submitted benefit of the estate, but to mention a few that are obvious is from the very beginning, the widow petitioned the court and you know how he got himself appointed the executive before the daughters had an opportunity to secure counsel. The daughters were told by Mr. Krueger, who represented the widow, that he would be happy to represent all three, but that the widow was going to be making claims for spousal reward, and particularly in this case was likely going to renounce the will. The widow left the biggest assets of the estate, which was a family farm and equipment, to his two daughters. And the widow made clear, and particularly in the first hearing, that it was her intention to renounce the will, which was her right. In the hearing, my clients researched Mr. Krueger and researched other attorneys and hired our firm. At that point, we ended our appearance and filed our own petition. Now, the widow objected to the appointment of the co-executives with her. After a contested hearing, the trial judge granted the daughter's request to be appointed the co-executives. That's a clear example of a service that was rendered for the benefit of the daughters, the benefit of the estate. It carried forth the decedent's desire to have his daughters act as co-executives of the estate. In addition, the daughters, when they became executives and had access to bank accounts and the estate accounts that were initially established by the widow, discovered that the widow had been using estate funds to pay for personal expenses for automobile insurance and another vehicle's insurance. They also needed to have the estate appraised and eventually sought and obtained the approval of the court through my petition to have the real estate and personal property sold at a public sale in order to be able to fund the renunciation and the spouse's work. There was no cash to speak of in the estate. That was all done and the sale was concluded. In addition, there was a claim brought by an neighboring farmer for herding calf that my clients thought was excessive. The widow, who later turned out to be a silent partner with her next door neighbors, did not join the daughter's resistance of that estate claim, but rather argued in favor of that amount. The trial judge, after hearing the arguments of counsel, reduced that estate claim. That benefited the estate as well. At the end, the estate had to be closed. Those matters had to be taken, the routine probate filings, and all set forth in the exhibit that we've attached and submitted to the trial court, which contained a very detailed statement of the services performed, the date performed, and the hour rate that was charged at that time. Now, the standard is abuse of discretion. I submit to you that the trial judge's decision here was palpably erroneous because it stated the law in some places and was not consistent with the application of the law to the facts of this case. The thing that makes it the easiest to demonstrate, I think, is the fact that the trial judge's findings, when you look at them, and they're only six, and that order, by the way, was drafted by Mr. Krueger and submitted to the court. Basically, the first three are that I represented the personal interests of the daughters, that represented to Mr. Krueger the daughters of my clients, and the finding was simply the presence of multiple attorneys in these states. Those, all along with the others, have a common thread, and that is the trial judge must have, if he adopted that finding, of those findings, must have believed that I was doing nothing but representing the personal interests of the daughters, who were not only the executors, but the beneficiaries of the estate. And I didn't finish up with Will. Will had said that the specific request of the farm, family farm, and the farm was to be by equal between the two daughters and the Will. So, those findings, I think, are palpably erroneous, and I think the record so supports. And when you look at it from a perspective of, you know, had the judge said, you know, Johnston, your hourly rate's too high, or I don't believe you spent enough time on this, or you spent too much, I understand. So, you know, it's certainly within the trial court's discretion to make that decision. It's certainly within the trial court of visa discretion. But what I think demonstrates clearly the trial court of visa discretion here is because the trial court awarded no fees to the daughters, zero. Now, that's particularly illuminating when you consider the case law that's been cited by both sides here. And the one that I cited in my brief, and I think bears a little bit of a discussion here, is the house estate, Chicago Bear Assembly, had an attorney that represented the personal representative. That lawyer did lots of bad things. He breached his fiduciary duty. He was found by the court to have engaged in several acts of bad faith toward the estate and the beneficiaries. Nonetheless, the trial court and the appellate court affirmed the reimbursement of his attorney fees on those acts that did, in fact, benefit the estate. Now, there's no finding here, and I don't think Mr. Kruger has found that there was any breach of fiduciary duty on our part or any bad faith. We simply administered the estate, and of course, the scene's last one was testament. When the trial court says no fees and there's no finding of bad faith or breach of fiduciary duty, that finding is simply erroneous, probably erroneous under the standard and requires reversal. Think of the effect. This case is a classic example. Our practice is a general practice for the last 35 years from the southern 20 or so counties, Illinois and Missouri. I had offices in Jonesboro and Carroll, Illinois, since 1981. I counsel people. I don't like co-executives. This is a classic reason why. You get multiple executives. You've got a question about who does what. If you do, then how is the dispute determined? Well, the ultimate arbiter of that is the trial court. But the effect here, if you extend out the trial judge's ruling to other cases, means that no beneficiary, who's also an executor, could take that duty of office without being subject to being claimed. Oh, wait a minute. Your attorney that you hired to probate the estate, to open it, to resist the estate claims, to sell property, all that benefited you personally, so you should cover that expense, and that should not be shared by the other three people who are, in fact, the beneficiaries of the estate as well as the executor. That's simply contrary to the state of the law that exists in the case law submitted to this court, and I submit to you requires the court's reversal. Quick mention of the daughter's travel expenses. One daughter lives in Colorado, been an aeronautical engineer for a long time, certainly long before they seemed in the will. Also, the other daughter lives in Nashville, Tennessee. Reasonable, compelling evidence was that, obviously, the deceit knew where his daughters were and that they were not in Massack County. And one of them yet to be, the co-executor, was his widow. A widow that he dated, by the way, ten years into the marriage with her widow. That was still his intention. The case law firm that I cited to the court and the probate code says that an executor's entitled reimbursement for expenses reasonably incurred for the discovery, preservation, and the disposition of assets. That's what they did. The girls did not, the daughters did not require or request an executive's fee. They simply wanted to be reimbursed for their travel time coming to Massack County, and that's their father's state, which they did from interviewing appraisers and auctioneers, inventorying, those sorts of things. There was no objection at trial about the reasonableness of the fees. One of the airfarers, one of the daughters, was hired because she booked a flight, and the day before, the court, for whatever reason, had to reset it. That's all they submitted for the reimbursement of. I think it was around four or five thousand bucks, and that also was palpably erroneous when that was necessarily incurred in connection with fulfilling their duties of office. For those reasons, your honors, we request the court to reverse the trial court's decision here and remand it back for consideration of the award of reasonable compensation for both the attorneys and the reimbursement expenses for the daughter. Any questions? Thank you, Your Honor. Counsel? May it please the court, Mr. Johnson. I'm my name is Richard Krieger, and I represent Leah Slayton, who is the widow of the decedent and also a co-executor. This I think the the main issue here, this is a really a burden-free case, is what it's about. The two issues are appealed. One is the attorney's fees for the daughter's attorney, and the other is travel expenses. Now, the travel expenses that are being sought are from the place where the two daughters reside, two Massack County. It's traveled from their home to Massack County. It's about $7,000 that are being claimed here. One of the daughters lives in Nashville. One of the daughters lives in Colorado. There's nothing in the record to show where these daughters live when the decedent wrote his will. That's outside the record. The burden of proof, and these cases are cited in our brief, is on the proponent that is seeking the attorney's fees to prove those attorney's fees. I think the case in the brief cited is Healy. There may be others. The same would be true of the expenses. Here you have a situation where the daughters were asking for a $17,000 fee, and it was clear that personal work for the daughters was included. I mean, that I think is very clear. You can look at the exhibits and see that. Now, the attorney's fees exhibit is 60 pages, 29 different statements, and what was basically done by the daughters was just to throw this at the court and not make any attempt to differentiate between personal expenses and expenses for the estate. And no, there's no breakdown. We would submit that the daughters did not meet the burden of proof, that there's a duty here when you clearly have personal work that's being done to separate that out between personal and the state. And the daughters did not do that. They did not meet the burden of proof. One of the six findings by Judge Williamson, the trial judge, was that the daughters had the burden of proof, and we submit that they did not sustain it. Now, the travel expenses are kind of done the same way. There's a request here for $7,000 in travel expenses. The mileage claimed was $2,246. That's by the daughter in Nashville, but no listing of dates, rate of mileage, purpose for coming, none of that was done. Just throw a figure at the court and expect it to be awarded. The same was true with the travel expenses. They included airfare, hotel, vehicle rental, but again, no breakdown, no dates assigned. It was just here they are, judge, awarded, ignoring completely the burden of proof. One thing that I'd like to cover, and it's in the reply brief, it's not in the initial appellant's brief or in the appellee's brief, it's in the reply brief, is this. I think what's trying to be done is that the order that the court signed, saying that it was prepared by Leah Slayton and therefore should be construed against Leah Slayton, a court order. What actually happened in this case is that Leah Slayton tendered an order to the court, a proposed order. The court made changes in that order. There was also a post-trial motion which the court granted in part, so it was changed, but the order that ended up being entered was largely what had been prepared by Leah Slayton. But the law is very clear that this rule of interpretation construed against the maker, it's a contract rule. It's not a rule that's applied on a court order because the court order is a pronouncement of the court. It's not something that the party does. And there's authority to that. Again, it was raised in the reply brief. We didn't have a chance to cite the cases, but I do have authority to support that position. This is an abuse of discretion standard. The law is that the court has broad discretion in awarding fees. Now, here you have a case where you have multiple executors, there's three of them, and multiple attorneys. There is the case of Greenberg that cited that it's an Illinois case that cited in our brief that says that when you have multiple attorneys, it's presumed that the attorneys act for the personal interest of their clients. And also that fees sought from the estate for multiple attorneys is not favored. And I can see the reasons for that. At one point in this case, uh, I totally Slayton. And this is in the record that I did not that I was doing personal work as well as the state work. And it was very difficult to separate the two. And from that point on, she needed to pay my attorney's fees. And she did. She paid the attorney's fees for myself. And it's I think that same rule applies to the daughter's attorney's fees. It's very difficult to separate. Well, maybe not very difficult, but there was no attempt made by them to separate it. And Leah did, in fact, pay all of her attorney's fees after the day where she had a conversation with she and I had a conversation that we need to. You need to pay. We're not going to seek reimbursement for the estate. Uh, there's, uh, arguments that are made in the brief about there was no counter evidence presented as to the fairness of Mr Johnson's fees, and somehow you have to produce that type of evidence in the record. I would submit that there is an exception where you have attorney's fees and the brief that the courts could consider. The trial courts can consider their own experience in attorney's fees is something they have. They're familiar with. They've been attorneys, and they've also been attorneys. I mean, judges on the court and see many types of fee cases. Here you have a judge with 35 years on the trial bench, and the chief judge is very familiar with this. Also, the judge has seen the involvement in the case and is in a position to determine what what's fair, what the quality of the work is. And in this case, the this probate estate before Judge Williamson continued for 34 months and had three contested hearings. The court was in a very good to evaluate how the fees should be awarded. It's really a burden of proof case here. Uh, there were some misstatements made in the initial oral argument. There was never a petition filed to sell real estate or to sell personal property. That was never done. The contested claim, uh, Leah Sladen, this widow had this. This, uh, Phil Sladen's cattle farmer cattle. That's why the state was opened up. They had to be fed. There were sales during those initial few months we were able to sell all the cattle. At some point, they had to be rounded up for sale. Uh, we couldn't do it by herself. The record shows these cattle were allowed. She went to her neighbors and hired them. Naturally, you know, she's gonna want to see the pain of what is a fair price. I mean, that was the contested matter of the estate claim, and the reduction was not that much. I think, actually, the attorney's fees probably exceeded any savings to the estate. Looking at it realistically, uh, unless the court court has some questions, I would ask that the top would be affirmed. Thank you. Thank you, Council Council.  Contrary. Mr. Kruger statement. I did not argue in the reply brief that this court order should be construed against the drafter as if because Mr Kruger did, that's nowhere in my reply brief. What I did state was what the law is and that judges were construed like any other document. The reason I address that reply brief is Mr Kruger's, uh, my rebuttal brief was Mr Kruger's reply brief says that, well, there may be other reasons because the court used the word primarily, which is actually the word Mr Kruger used when he drafted it. And that's why I made the point of saying the word primarily that includes these six factors doesn't magically include things not otherwise in the record, because the pleadings and the proof of government, what the record in this case is and what decisions can be made upon them. And to that extent, as we submitted, the decisions of the trial court were in error. For instance, there's nothing in the record objecting to the hourly rate that I charged or the amount of time I spent. I testified under oath about what it was. I submitted the statements of accounts that are straightforward. There was no carrying evidence from any anybody. Mr Kruger testifying, calling by to argue about the hour rate or the time spent. More importantly, I submitted to the court a list of cases in the southern five or six counties, six. Yeah, five counties that I have been involved in. It involved Judge Williamson approving my hourly rate at $250 an hour when the rate was submitted in this case was $200 an hour. So he, Judge Williamson had a record of approving those fees and that was submitted. I think it's my exhibit two in the final report. The second point I want to address is the reliance on Greenberg. Somehow that there's a presumption that it was for the personal benefit. That case is easily distinguished. That case involved three co executors with a will said the decision of any two controls to the executors decided to hire an attorney. The third executive went out, hired their own attorney to look over the show. The other one, the court said, No, no, that's that's a personal expense. That's not for the I'm gonna require. That's not the case here. Mr Kruger is correct. He does represent the personal interest of the will, and that happened. The men, the girls, my daughters, the daughters, my clients became the executives. They renounced the will that put them at odds. There was no personal business of the daughters is reflected in the statement of account that I submitted. They were all related to the administration. The state fact that they're simply beneficiaries along with the will doesn't change that. They still have an obligation to maximize the estate and to minimize the money out. And that benefits not just the dollars, but the will as well. The the last thing that I think that I'll make for stopping my argument is just the clearly erroneous decision of some of these findings. And one is that they're saying that Mr Kruger put the order in the court apparently adopted that there's that presumption on that. I never talked to leave selling the will outside the witness stand. I always represented that. I represented the dogs. That's true. I represent the dollars is exactly I communicated exclusively with Mr Kruger at the very first hearing where the will was contesting my client's ability to become executors on the will as nominated by their father. She conceded to me across examination. Mr Kruger was indeed representing her in her personal capacity as well. At that point, I could not under the rules of professional responsibility communicate directly with the widow. She had a terrible point to that side of the other rules of professional conduct would have prohibited me from trying to make contact directly with the widow. Yet that's in the findings by the trial court, but actually put there on Mr Kruger that was adopted by the trial court. Those and the other ones that I represented there were simply erroneous, and they represent a manifest injustice to these daughters who serve as executors at their father's direction and his will. They did honorably, dutifully and to his conclusion and submitted a statement for fees and regional travel expenses that should have been paid. And when the court denied all that and all the attorneys that that makes very clear that the trial court abuses aggression because that's inconsistent with every case cited to the court. All the cases cited on both sides always deal with. Well, is there sufficient itemization of the fees is can we tell what the attorney was doing? That's all set forth in those statements, and there's never been any attack on that. They all support that these these services were done for the benefit of the state and the Dewey appointed co executives. For those reasons, we asked the court to reverse it and remand back to the judge with consideration of fees and costs. No questions. I'm disappointed getting questions. I feel like I got cheated. The two of you argued clearly. What can we say? Courts in a short recess will resume moral argument.